IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE MANAGEMENT GROUP, LLC,

                    Plaintiff,                  OPINION AND ORDER

v.

                                               16-cv-470-wmc

T&G CONSULTANT AGENCY, LLC,

                    Defendant.

---

      Plaintiff The Management Group, LLC, operating under the tradename "TMG" asserts Lanham Act and Wisconsin common law claims of trademark infringement against defendant T&G Consultant Agency, LLC, and seeks a preliminary injunction to bar defendant from using an infringing trademark.  Plaintiff initiated this lawsuit and filed the motion for preliminary injunction based on the Wisconsin Department of Health Services' recent certification of defendant as a consultant agency in the same market (indeed, the same program) in which TMG competes.  The court held a hearing on plaintiff's motion for preliminary injunction on July 11, 2016, at which the parties appeared personally and by counsel.  For the reasons set forth at yesterday's hearing and that follow, the court will grant plaintiff's motion in part, require the posting of a bond and expedite the trial of this case.

FACTS

**A.  The Parties**

      Plaintiff The Management Group, LLC, which uses the tradename TMG, is a Wisconsin limited liability company that counsels and serves individuals who participate

in the "Include Respect I Self-Direct" ("IRIS") Medicaid waiver program administered by the Wisconsin Department of Health Services ("DHS") through Wisconsin, Aging & Disability Resource Centers ("ADRCs"). TMG is a certified "IRIS Consultant Agency" ("ICA"). TMG has operated since at least January 1, 1987, under the TMG tradename. TMG's domain name is tmgwisconsin.com.

On March 12, 2015, Gene Shikhman organized two limited liability companies in the State of Wisconsin -- A&C Management Group LLC and defendant T&G Consultant Agency LLC. A&C Management was organized for the purpose of applying to DHS for certification as an IRIS Fiscal Employer Agent, and T&G Consultants was organized for the purpose of applying to the Wisconsin Department of Health 2 Services for certification as an IRIS Consultant Agency. Plaintiff refers to defendant as "T&G," whereas defendant refers to itself as "T&G Consultants," representing that the latter form is the only way T&G Consultants holds itself out to DHS and the market for IRIS services. The court will refer to defendant as "T&G Consultants," but will address below plaintiff's concern of defendant's use of the shortened name "T&G."

Shikhman explained that A&C Management is named after the first letters of the first names of his children (Aiden and Chloe), and T&G Consultants is named after the first letters of the middle names of his children (Tyler and Giselle). T&G Consultants' domain name is iristandgwi.org. On June 30, 2016, T&G Consultants was certified by DHS to begin doing business as a certified ICA as of Monday, July 11, 2016.

2

### B. The Market

From the inception of the IRIS program in 2008 until very recently, TMG has been the only certified ICA operating in the state of Wisconsin. During the hearing, counsel for plaintiff described one other current ICA and another company (in addition to defendant) that is about to commence business as a certified ICA, which means that there will be a total of four competitors in this market.

ADRCs are responsible for providing new or existing IRIS participants with "options 6 counseling" -- *i.e.*, counseling meant to inform people about their choices, including choice of ICA. ADRCs are currently administered directly by DHS through contracts with individual counties, in an effort to ensure adequate oversight and neutrality of referral information. TMG represents -- and T&G Consultants does not dispute -- that it has no control over how ADRCs are trained or do their work. In counseling IRIS participants, ADRCs receive brochures supplied directly by certified ICAs, which are then offered to participants. (*See* Jensen Decl., Ex. C (dkt. #14-3) (TMG brochure).) ADRCs also rely on a chart prepared by DHS, which offers very basic information about each certified ICA or provider. (*See id.*, Ex. B (dkt. #14-2) (IRIS options chart from Milwaukee).)

Plaintiff maintains that ADRCs were to receive updated charts listing current certified provider choices on July 8, 2016, and these charts were to include both TMG and T&G Consultants as ICA options within the IRIS program. T&G Consultants contends that it "anticipates" being identified as "T&G Consultants" on the chart. (Def.'s Resp. to Pl.'s PFOFs (dkt. #19) ¶ 29.) Moreover, DHS has indicated that the

3

IRIS website will be updated on July 11 to include T&G Consultants, though T&G Consultants again clarifies that it will be listed as "T&G Consultants."  In addition to ADRCs enrolling new participants, DHS also send out a letter several times a year to existing IRIS participants, informing them of all available ICAs and advises the participants of their right to choose the provider they prefer.

For purposes of this motion, the parties concede that the services they offer are identical.  TMG is a certified ICA by DHS, and defendant was recently certified as an ICA and anticipates commencing business soon.  The parties, however, dispute (1) the level of sophistication of the IRIS participants, (2) whether the participants primarily learn about the ICAs through word-of-mouth, (3) whether that information allows participants to distinguish between the various ICAs, and (4) the likelihood of participants confusing the company names over time in a manner that may dilute plaintiff's brand equity.

### C. The Mark

TMG contends that its success in meeting the needs of enrollees or participants in the IRIS program is due "in large part due to TMG's longstanding and hard-earned goodwill in its name and the TMG mark." (Pl.'s PFOFs (dkt. #13) ¶ 8.)  TMG further contends that the "positive reputation of TMG's name and mark has been carefully established through the creation and maintenance of partnerships and goodwill between TMG, IRIS participants, care providers, and DHS since the inception of the IRIS program." (*Id.* at ¶ 9.)

4

On November 6, 2015, plaintiff filed an application for the trademark "TMG." (Polakowski Decl., Ex. A (dkt. #6-1) (Serial No. 86/821,846).) That application is still pending. Previously, on March 5, 2014, plaintiff registered a "TMG" trademark in Wisconsin as shown below:



(Polakowski Decl., Ex. B (dkt. #6-2) (application dated 4/13/11); *id.*, Ex. C (registration provided 3/5/14).) The TMG mark used in plaintiff's current brochure, though, is different from that registered:



(Jensen Decl., Ex. C (dkt. #14-3).) TMG's use of the "TMG" name in commerce and as a certified ICA predates any of defendant's uses of T&G Consultants by at least seven years.

### D. Procedural Posture

In November 2015 and again in January 2016, plaintiff's counsel wrote letters to defendant and its counsel that objected to the use of T&G Consultants in its name. (Polakowski Decl., Exs. G, H (dkt. ##14-7, 14-8).)  T&G Consultants acknowledged receipt of the November correspondence by letter dated December 17, 2015, and declared its intention to continue using the T&G name regardless of TMG's objections. (*id.*, Ex. I (dkt. #14-9).)

Given DHS's elaborate certification process and role of its ADRCs in marketing ICAs, the court inquired at the status conference as to DHS's role or position in this dispute.  Plaintiff maintains that DHS has indicated to TMG that the name of an ICA is not a part of its certification criteria.  A review of the IRIS Consultant Agency Certification Criteria confirms that nothing in the certification criteria makes issuance of the certification dependent upon maintenance of an entity's name.  In its response, defendant submitted an email dated July 5, 2016, purportedly from Jody Brassfield, identified in her email signature as the Section Chief, Office of IRIS Management, Bureau Long Term Care Financing, Division of Long Term Care / DHS, to Renee Mueller, who has an email address of tandgconsultingreneem@gmail.com, stating that "DHS is not going to get involved in this matter," but "[b]y default if DHS had an issue with the name we would not have certified you under the name T & G Consultants or at least enter into negotiations requesting a change.  Since neither happened and you will be certified under that name[,] I think that demonstrates we have no issue with it." (Shikhman Decl., Ex. 7 (dkt. #21-7).)

Plaintiff filed this lawsuit on July 1, 2016, along with a motion for a temporary restraining order and a motion for preliminary injunction.

OPINION

I. Standard of Review of Motion for Preliminary Injunction

To obtain a preliminary injunction, "a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011) (internal quotations omitted)). If the moving party makes this initial showing, then "the court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.*

II. Likelihood of Success on the Merits

Plaintiff asserts both Lanham Act, 15 U.S.C. § 1125(a), and Wisconsin common law trademark infringement claims, as well as a separate Lanham Act claim for cyberpiracy, 15 U.S.C. § 1125(d).[1] As a threshold issue, the Lanham Act claim only covers marks used in interstate commerce. *See* 15 U.S.C. §§ 1121, 1125 (requiring "use in commerce" as prerequisite to liability), 1127 (defining "commerce" to include all

---

[1] The cyberpiracy claim is based on defendant's domain name of "iristandgwi.org." Finding the trademark infringement claims to be stronger, the court opts to focus on those claims, as did the parties.

commerce which Congress has the power to regulate). At yesterday's hearing, TMG represented that it uses the mark in commerce nationally and is concerned about its long term diminution in value, beyond any specific impact from lost participants as an ICA in Wisconsin. Based on that representation, the court is satisfied that the interstate commerce element of the Lanham Act has been met.

With that initial issue aside, both the federal and state trademark infringement claims require plaintiff to demonstrate that (a) the mark is protectable and (b) the defendant's use of the mark is likely to cause confusion. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001) ("To prevail on [a Lanham Act] claim, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers."); *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 234, 552 N.W.2d 440, 444-45 (Ct. App. 1996) (citing *First Wis. Nat'l Bank v. Wichman*, 85 Wis. 2d 54, 64-66, 270 N.W.2d 168, 173-74 (1978)) ("In order to prevail on [a state common law trademark infringement] claim, the plaintiff must show that a designation meets the definition of trademark or trade name and that the defendant's use of a similar designation is likely to cause confusion.").

### A. Protectable trademark

While TMG has applied for a U.S. trademark, it has yet to receive it. As such, there is no rebuttable presumption under the Lanham Act that the trademark is valid or

worthy of protection.  *See* 15 U.S.C. § 1115(a).  Therefore, the burden is on TMG to prove that its mark is protectable.[2]

Whether a trademark is valid depends on the classification of the mark at issue.  "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)).  Generic terms or phrases are entitled to no protection; suggestive, arbitrary and fanciful phrases are always entitled to trademark protection; and descriptive phrases are "generally not protectable as trademarks," but become protectable if the marks "acquire[] secondary meaning." *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996) (alteration in original).

"A generic term is one that is commonly used to name or designate a kind of goods." *Id.* at 1157.  "Unlike a trademark, which identifies the source of a product, a generic term merely specifies the type, or genus, of thing into which common linguistic usage consigns that product." *Id.* at 1157 (quoting *Gilmix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir. 1983)).  "A descriptive mark, on the other hand, is one that merely describes the ingredients, qualities, or characteristics of an article of trade or

---

[2] In the context of its Cyberpiracy claim, 15 U.S.C. § 1125(d), plaintiff cites to a Sixth Circuit case for the proposition that "[a]lthough TMG's U.S. trademark application is pending, its mark is still protected."  (Pl.'s Br. (dkt. #4) 7 (citing *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201, 205 (6th Cir. 2004)).)  That case, however, does not stand for the proposition that the filing of an application somehow grants a presumption that the mark is protectable; instead, the case simply stands for the unremarkable proposition that registration is not required in order to pursue Lanham Act claims, including one under § 1125(d).

service." *Id.* at 1157. "Suggestive ('Tide' laundry detergent), arbitrary ('Apple' computers), and fanciful ('Exxon' gasoline) marks collectively are distinctive in the sense that secondary meaning is likely to develop, as a result of which any duplicate use of the name is likely to breed confusion about the product's source." *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001).

TMG utterly fails to address this element, simply asserting without any reasoning or support that it is a "distinctive" mark. (Pl.'s Br. (dkt. #4) 6.) Given the framework formulated by Judge Friendly and described above, TMG should at least have explained what is meant by "distinctive." To the extent TMG believes that the mark's distinctiveness elevates it beyond generic to descriptive, then TMG would still need to demonstrate secondary meaning in order for its mark to be protectable. *Mil-Mar Shoe*, 75 F.3d at 1157 (explaining that descriptive phrases become protectable if the marks "acquire[] secondary meaning"). To be fair, T&G Consultants also fails to address this element, ostensibly in agreement with plaintiff that the TMG mark is valid.

In the context of abbreviations, there is some Seventh Circuit caselaw holding that the categorization of the abbreviation should be the same as the categorization of the underlying phrase. *See Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 494 (7th Cir. 1992) ("abbreviations for generic or common descriptive phrases must be treated similarly" to the full word; holding that neither "Multistate Bar Examination," nor "MBE" are entitled to trademark protection); *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:37 (4th ed. 2012) ("An abbreviation of a generic name which still conveys to the buyer the original generic

connotation of the abbreviated name, is still 'generic.'"); *Nat'l Pasteurized Eggs, Inc. v. Michael Foods, Inc.*, No. 10-cv-646, *slip op.* at *78-86 (W.D. Wis. May 18, 2012) (a circle P in a case involving eggs was generic because the word that it represented (pasteurized) was generic).

In those cases, however, the abbreviation or acronym trademark covered a generic, commonly used phrase, unlike the initials "TMG" which seem different than the underlying phrase "The Management Group." Indeed, the TMG mark seems most similar to the mark considered by the Seventh Circuit, in *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660 (7th Cir. 2001), which determined that the "CAE" mark was arbitrary and entitled to protection:

> The CAE mark is an unpronounceable set of letters and thus falls into the category of letter marks generally accorded broader trademark protection because "it is more difficult to remember a series of arbitrarily arranged letters than it is to remember words, figures, phrases, or syllables." 3 McCarthy § 23:33, at 23–97; *see also Edison Bros. Stores, Inc. v. Brutting E.B. Sport–Int'l Gmbh,* 230 U.S.P.Q. 530, 533 (TTAB 1986) (referring to the "well-established principle" of trademark law that confusion is more likely between "arbitrarily arranged letters" than other categories of marks). This principle is particularly applicable here because the letters CAE appear without reference to the underlying words from which they were originally derived—Canadian Aviation Electronics. *See Weiss Assoc., Inc. v. HRL Assoc., Inc.,* 902 F.2d 1546, 1548 (Fed.Cir.1990) (invoking this principle and finding a likelihood of confusion between TMS and TMM for competitive specialized computer software).

*Id*. at 684-85. Coupled with defendant's lack of opposition, the court finds that plaintiff is likely to succeed in demonstrating that it has a protectable trademark.

### B. Likelihood of Confusion

Unsurprisingly, the parties' focus is on whether plaintiff can demonstrate a likelihood of confusion with the TMG mark. In the Seventh Circuit, courts evaluate seven factors in determining whether consumers are likely to be confused: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of defendant to 'palm off his product as that of another.'" *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043-44 (7th Cir. 2000) (quoting *Rust Env't & Infrastructure Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir. 1997)). No single factor is dispositive, and different factors will weigh more heavily from case to case, depending on the facts and circumstances involved. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001). While it appears plaintiff has no instances of actual confusion (perhaps because defendant has yet to operate as an ICA), the other factors either weigh in favor of finding a likelihood of confusion or are neutral.

### (1) Similarity between the marks:

Defendant attaches a T&G letterhead welcoming a new participant, which depicts T&G Consultants mark as follows:

**T & G Consultant Agency**

(Shikhman Decl., Ex. 5 (dkt. #21-5).) The court agrees with defendant that this mark does not resemble TMG's mark in terms of color, font or design. As such, the only bases

for finding confusion are (1) the letters themselves and (2) the sound of the two marks. "Exact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Americas Tire Operations, LLC v. Fed. Corp.*, 673 F.3d 1330, 1337 (Fed. Cir. 2012) (citing *Saxlehner v. Eisner & Mendelson Co.,* 179 U.S. 19, 33 (1900) ("It is not necessary to constitute an infringement that every word of a trademark would be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article.").

As indicated above, plaintiff's motion is premised on defendant's use of the tradename "T&G." In its response, defendant clarifies that it intends to use the tradename "T & G Consultants."[3] While the addition of "Consultants" somewhat ameliorates plaintiff's claim, as plaintiff persuasively argued at yesterday's hearing, "consultants" is a general term used in the industry to define those who provide the marketed service for TMG and the other ICAs competing in this same space. Moreover, cases involving similar competing abbreviations support plaintiff's argument. *See, e.g., Weiss Assoc., Inc. v. HRL Assocs., Inc.*, 902 F.2d 1546 (Fed. Cir. 1990) (affirming denial of registration of "TMM" mark for software because: (1) it was likely to be confused with a registered mark "TMS," also used for software; (2) "[t]he marks sound alike and look alike; and (3) "[t]he products are very similar and directly compete."); *Royal Appliance Mfg. Co. v. Minuteman Int'l, Inc.*, 30 F. App'x 964, 967-68 (Fed. Cir. 2002) ("Even accepting arguendo Appellant's assertion that MVP 'suggests that the goods are representative of the upper echelon of vacuum cleaners,' we are still left with the clear

---

[3] It also appears that defendants intends to keep spaces between the "T" and "&" and "G," though defendant does not stress this in its filings.

similarity between MPV and MVP. As the Board noted, the two marks consist of the same three letters, and they both begin with an 'M.' Moreover, the last two letters in Royal's mark, 'VP,' are a transposition of the remaining letters in Minuteman's mark, 'PV,' and the marks sound alike when said aloud. Given this substantial evidence of similarity, we see no reason to disturb the Board's finding on this issue." (internal citation omitted)).

In its submission and during the hearing, plaintiff focused on the sound, perhaps more so than the visual effect. In considering an infringement claim, courts are directed to compare marks "along the axes of their appearance, *sound*, connotation and commercial impression." *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334, 1340 (Fed. Cir. 2015) (internal citation and quotation marks omitted) (emphasis added). As such, the court credits plaintiff's argument that it is difficult to distinguish between an oral TMG and T&G, especially given plaintiff's inability to control the ADRCs description of the two companies, much less that of fairly unsophisticated consumers in the market for nearly identical IRIS services offered by TMG and its soon to be competitor, T&G Consultants. As such, the court finds that the similarity of the marks weighs in favor of finding a likelihood of confusion.

(2) – (3) Similarity of the products and area and manner of concurrent use:

Given that there is no dispute that the two parties will compete in the same industry, selling the same product and services, the second and third factors also weigh heavily in favor of finding a likelihood of confusion.

(4) Degree of care likely to be exercised by consumers:

The parties dispute whether the ADRCs will be able to adequately describe the differences between the parties so as to limit confusion of the IRIS enrollees and whether the IRIS enrollees exercise care in selecting an ICA consultant. While there may be variation in client experience, the court finds credible plaintiff's assertion that the population of existing and potential participants for IRIS programming and services tend to function by word of mouth, including some who are illiterate, and will obtain information orally from the ADRCs and fellow participants. Given the similarity in sound, this factor also supports a finding of a likelihood of confusion.

(5) Strength of complainant's mark:

Plaintiff provides little data to support its claim that it has a strong mark, though the fact that it was the only ICA for about a seven-year period supports a finding of the strength of the mark, at least relative to a new ICA like T & G Consultants, who has *zero* brand equity or mark strength.

(6) Actual confusion:

In its proposed findings of facts, plaintiff maintains that actual confusion has occurred within TMG: "Throughout an internal TMG exercise which occurred on July 5, 2016, TMG staff referred to TMG as 'T&G.'  Not a single person was able to differentiate between the reference to 'TMG' and the reference to 'T&G.'" (Pl.'s PFOFs (dkt. #13) ¶ 39 (citing Sievert Decl. (dkt. #15) ¶ 4.)  While the court does not credit

15

this odd experiment, the court also does not fault plaintiff for failing to come forward with actual instances of confusion in light of the fact that defendant has yet to compete in the marketplace. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ("As we have stated many times, however, the plaintiff need not show actual confusion in order to establish likelihood of confusion.").

### (7) Intent of defendant to palm off his product as that of another

Finally, the court finds more persuasive defendant's evidence that the T&G Consultant Agency, LLC, name was selected based on sentimental, family significance. Still, "[t]here is a heavy burden on the newcomer to avoid consumer confusion as to products and their source." *Juice Generation*, 794 F.3d at 1340. As such, while there may not be an explicit intent to exploit TMG's mark, the lack of intent does not excuse trademark infringement, especially when T&G Consultants had advance warning of the confusion issue in plenty of time to make a switch with no meaningful investment in the brand or monetary cost to converting.

### III. Irreparable Harm

Having found at least some likelihood of success on the merits, the court also finds a sufficient risk of irreparable harm to warrant entry of a preliminary injunction, particularly with respect to the general use of the "T&G" or "T & G Consultants" names, as opposed to the original decision to obtain services of an ICA based on the multiple choices offered by seemingly neutral government representatives in the form of ADRCs.

"[I]t is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). Likewise, the difficulty in assessing the damages associated with a loss of goodwill supports finding that the plaintiff lacked an adequate remedy at law. *Id.*; *see also Ty, Inc.*, 237 F.3d at 902 (noting that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by [trademark] violations") (internal citation omitted); *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997) (noting that injury to goodwill "can constitute irreparable harm for which a plaintiff has no adequate remedy at law"). Accordingly, the court will endeavor to fashion a short-term remedy in the form of a preliminary injunction that reasonably addresses these harms without unnecessarily prohibiting T&G Consultant's entry into the market where appropriate.

**IV. Balance of the Harms and Public Interest**

Finally, with respect to the last two factors, the court credits defendant's representations in its submissions and at the hearing as to its now sunk and fixed costs and potential loss of revenue from any delay in its entry into the market. The court will also attempt to ameliorate these concerns in crafting a preliminary injunction.

With respect to the public interest, while the public interest is certainly served by "not being deceived about the products they purchased," *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n.8 (7th Cir. 1988), the public interest is also

served by increased competition. The court has similarly attempted to recognize this tension in crafting an appropriate preliminary injunction.

## V. Entry of an Injunction

Having found some likelihood of success, sufficient risk of irreparable harm to TMG, and that both the balance of harms and the public interest support entry of an injunction, the court will enter a preliminary injunction detailed in the order below and expedite this case to a final resolution on the merits.

ORDER

IT IS ORDERED that:

1) Plaintiff The Management Group, LLC's motion for temporary restraining order (dkt. #2) is DENIED.

2) Plaintiff's motion for preliminary injunction (dkt. #3) is GRANTED. The court enters the following injunction:

    a. Defendant T&G Consultants, LLC, is directed to staple the following disclaimer to all print materials (including brochures offered by ADRCs) and prominently display it on its website:

        "T&G Consultants is a new consulting company that was recently certified by the Wisconsin Department of Health Services. T&G Consultants is not affiliated in any way with The Management Group, also known as "TMG." TMG is a separate company and continues to provide IRIS services as well."

        In addition, for brochures:

        "You can find TMG's contact information in the TMG brochure, also provided at this time by the ADRC."

        Finally, for its website:

18

> "You can find TMG's contact information at its website: http://www.tmgwisconsin.com/ or by calling 1-844-864-8987."

    b. In any oral interactions with potential clients, defendant first must ask if the individual is a current or past enrollee. If so, defendant must state as follows:

> "T&G Consultants is a new consulting company that was recently certified by the Wisconsin Department of Health Services. T&G Consultants is not affiliated in any way with The Management Group, also known as "TMG." TMG is a separate company and continues to provide IRIS services as well. Did you wish to remain with TMG?"
>
> If the answer is yes, then T &G Consultants must offer TMG's contact information as follows:
>
> "Phone Number: 1-844-864-8987
>
> Email Address: info@tmgwisconsin.com
>
> Website: http://www.tmgwisconsin.com/."

    c. Defendant is prohibited from shortening its name to "T&G" in any communication with possible participants, including in print, over the phone or in person.

    d. Defendant is prohibited from adopting any similarity with TMG's mark in any printed materials, with respect to color, font or otherwise.

    e. Defendant may not market itself to any customer other than through the referral channel created by the Wisconsin Department of Health Services' ADRCs during the pendency of this lawsuit.

3) In light of entry of this injunction, plaintiff has until July 17, 2016, to post a bond in the amount of $75,000. Failure to do so will result in the lifting of the preliminary injunction.

4) This case is set for jury trial to begin on Monday, September 19, 2016. The following pretrial deadlines apply:

    a. Disclosure of liability experts: plaintiff: August 12, 2016; defendant: August 26, 2016.

    b. Discovery Cutoff: August 30, 2016.

    c. Settlement Letters: August 30, 2016.

    d. Rule 26(a)(3) Disclosures and All Motions in Limine: August 31, 2016.

        Responses: September 7, 2016.

    e. Final Pretrial Conference: September 13, 2016, at 4:00 p.m.

Entered this 12th day of July, 2016.

    BY THE COURT:

    /s/
    _____
    WILLIAM M. CONLEY
    District Judge